1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   SONDRA DYNESE BURTON,                    )   Case No.: 1:18-cv-1132 - JLT
                                              )
12            Plaintiff,                      )   ORDER REMANDING THE ACTION PURSUANT
                                              )   TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13       v.                                   )
                                              )   ORDER DIRECTING ENTRY OF JUDGMENT IN
14   ANDREW M. SAUL[1],                       )   FAVOR OF SONDRA DYNESE BURTON, AND
     Commissioner of Social Security,         )   AGAINST DEFENDANT ANDREW M. SAUL,
15                                            )   COMMISSIONER OF SOCIAL SECURITY
              Defendant.                       )
16   _____ )

17          Sondra Dynese Burton asserts she is entitled to continuing benefits under Title II of the Social

18   Security Act, and her benefits should not have been terminated.  Plaintiff argues the administrative law

19   judge erred in evaluating the record and seeks judicial review of the decision finding her disability had

20   ended.  Because the ALJ erred in evaluating the medical opinions related to Plaintiffs physical and

21   mental limitations, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42

22   U.S.C. § 405(g).

23                                   <u>**BACKGROUND**</u>

24          Plaintiff reported she was unable to work due to fibromyalgia, headaches with nausea, IBS,

25   immune system problems, concentration, and balance problems.  (Doc. 10-5 at 2) The Administration

26   determined the medical evidence submitted showed Plaintiff was disabled as of March 6, 2007, based

27

28          [1] This action was originally brought against Nancy A. Berryhill in her capacity as then-Acting Commissioner.
     (*See* Doc. 1)  Andrew M. Saul, who is now the Commissioner, has been automatically substituted as the defendant in this
     action. *See* Fed. R. Civ. P. 25(d).

                                              1

upon her "impairments and weight loss." (*Id.* at 3) Plaintiff's application was reviewed in November 2008, and the medical evidence showed her "condition [remained] severe enough to qualify for benefits." (*Id.* at 20)

In April 2014, the Administration reviewed Plaintiff's case and found that her health had improved, and Plaintiff was able to work. (Doc. 10-5 at 20) Plaintiff reported that she was disabled due fibromyalgia, headaches, vomiting, stomach problems, and mesenteric artery syndrome. (*Id.*) The Administration found these conditions were "no so severe as to be totally disabling," and despite Plaintiff's lack of work experience, she "should be able to work at some jobs which are not difficult to learn and remember." (*Id.*)

Plaintiff requested a hearing, asserting her condition was "worse than when [she] originally was put on disability." (Doc. 10-5 at 55) The request for a hearing was granted, and Plaintiff testified before an administrative law judge on March 28, 2017. (Doc. 10-3 at 16) The ALJ determined Plaintiff's disability ended as of March 26, 2014 and issued an order that affirmed the termination of benefits on July 6, 2017. (*Id.* at 16-24) Plaintiff requested review by the Appeals Council, which denied her request on June 18, 2018. (*Id.* at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that

detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**REVIEW OF DISABILITY BENEFITS**

Recipients of disability benefits are subject to periodic review of their continued entitlement to such benefits. 20 C.F.R. § 404.1594(a). The Commissioner must review the individual's evidence of continuing disability "on a neutral basis." 20 C.F.R. § 404.1594(b)(6). When substantial evidence demonstrates that the individual is able to engage in substantial gainful activity as a result of medical improvement, the Commissioner will terminate the award of disability benefits. 42 U.S.C. § 423(f)(1).

"To assure that disability reviews are carried out in a uniform manner, that decisions of continuing disability can be made in the most expeditious and administratively efficient way, and that any decisions to stop disability benefits are made objectively, neutrally and are fully documented," the Commissioner established an eight-step process for the reviews. 20 CFR § 404.1594(f). The process requires the ALJ to determine at steps one through four whether Plaintiff: (1) is engaging in substantial gainful activity, (2) has an impairment that meets or medically equals a listed impairment forth in 20 C.F.R. § 404, Subpart P, Appendix 1, and (3) had a medical improvement (4) related to her ability to work. *Id.* At step five, if there was no medical improvement, or the improvement was not related to the claimant's ability to work, the ALJ considers whether an exception under the Regulations may be applied. *Id.*, § 404.1594(f). Next, if the medical improvement relates to the ability to do work, the ALJ must evaluate whether the claimant's "impairments in combination are severe." *Id.* If the impairments are severe, the ALJ will determine at step seven whether a claimant has the ability to "do work … done in the past." *Id.* If so, the ALJ may stop the sequential process and "disability will be found to have ended." *Id.*, § 404.1594(f)(7). When a claimant cannot perform past work, an ALJ considers at step eight whether a claimant has the ability to do other work, considering her residual functional capacity, age, education, and past work experience. *Id.*, § 404.1594(f)(8).

Pursuant to the eight-step process, the ALJ determined first that Plaintiff had not engaged in substantial gainful activity. (Doc. 10-3 at 18) The ALJ found Plaintiff's medically determinable impairments, as of March 26, 2014, included: "fibromyalgia; left shoulder internal derangement; mild bilateral carpal tunnel syndrome; chronic pain syndrome; abdominal pain of unknown etiology; status post superior mesenteric artery atheroma syndrome surgery; and migraine headaches." (*Id.*) At step

3

three, the ALJ found these impairments did not meet or medically meet a Listing. (*Id.*) At step four, the ALJ determined Plaintiff had "[m]edical improvement occurred as of March 26, 2014," and noted her "body mass index improved from 15.0 to 20.1-21.25." (*Id.*) The ALJ concluded the medical improvement was related to Plaintiff's ability to work because her impairments "no longer met or medically equal[] the same listing that was [previously] met." (*Id.*) At step six, the ALJ determined Plaintiff "continued to have a severe impairment or combination of impairments." (*Id.*)

Next, the ALJ evaluated Plaintiff's residual functional capacity as of March 26, 2014, and determined:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in an 8 hour day; stand and walk 6 hours in an 8 hour day; occasionally stoop, crouch, kneel, crawl, and climb ladders, ropes, and scaffolds; frequently climb stairs and ramps; occasionally reach overhead; and occasionally perform forceful [gripping] and grasping.

(Doc. 10-3 at 19) Plaintiff did not have past relevant work for the ALJ to evaluate with this residual functional capacity. (*Id.* at 22) At step eight, the ALJ determined, "As of Mach 26, 2014, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present as of March 26, 2014, the claimant was able to perform a significant number of jobs in the national economy." (*Id.*) Thus, the ALJ concluded Plaintiff's disability had ended. (*Id.*)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in evaluating the medical record by rejecting the opinions of her treating physicians. (Doc. 14 at 15-19) In addition, Plaintiff contends the ALJ failed to properly address her mental impairments. (*Id.* at 19-22) The Commissioner asserts that the ALJ's evaluation of the medical evidence was proper, and she "properly found Plaintiff's mental impairments as not severe." (Doc. 16 at 4, 11) (emphasis omitted).

### A. Evaluation of the Medical Record

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight, but it is

not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). However, a physician's opinion is not binding upon the ALJ, and may be discounted whether another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying a "clear and convincing" reason. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Plaintiff contends the ALJ erred in addressing the opinions of her treating physicians, Parmod Kumar and Ramu Thiagarajan, who offered opinions related to Plaintiff's physical limitations and abilities. (Doc. 14 at 15-19) Because their opinions were contradicted by Dr. Frankel, a reviewing physician, the ALJ was required to identify specific and legitimate reasons to reject the limitations identified by Drs. Kumar and Thiagarajan. *See Lester*, 81 F.3d at 831. In addition, Plaintiff asserts the ALJ erred in evaluating the opinions from Dr. Pauline Bonilla, who performed a psychological consultative examination, and Dr. Olaya, who completed a mental residual functional capacity assessment. (*Id.* at 19-21) As these physicians were the only two to give opinions related to Plaintiff's mental functioning, the ALJ was required to identify clear and convincing reasons to reject the limitations. *See Lester*, 81 F.3d at 830.

### 1. Opinion of Dr. Parmod Kumar

On February 4, 2015, Dr. Kumar wrote a letter in which he indicated that he was Plaintiff's "gastroenterologist and internist for many years."[2] (Doc. 10-17 at 39) Dr. Kumar noted Plaintiff had been diagnosed with "Super mesenteric artery/SMA syndrome, for which she underwent extensive exploratory laparotomy." (*Id.*) In addition, Dr. Kumar noted Plaintiff had a gastrojejunostomy surgery, after which her symptoms "improved somewhat but not to the point where she is pain free." (*Id.*) According to Dr. Kumar, Plaintiff began to have more pain after the surgery, and an "upper endoscopy

---

[2] The ALJ erroneously identified Dr. Kumar as Plaintiff's neurologist, rather than her gastroenterologist. (Doc. 10-3 at 21)

revealed that she [had] a large marginal ulcer at the anastomotic site after surgical intervention." (*Id.*)

Dr. Kumar noted Plaintiff also had been diagnosed with fibromyalgia, gastritis, and gastroesophageal

reflux disease (GERD). (*Id.*) Dr. Kumar opined:

> All these medical conditions have caused her to have Crippling Function Bowel disease, which causes her to have abdominal bloating, abdominal pain, abdominal discomfort and diarrhea. These conditions enable her to have full-time employment of 8 hours a day, 5 days a week.
>
> Based on my brief description of her medical history it is my professional opinion that she should be granted full disability.

(*Id.*)

The ALJ addressed this statement from Dr. Kumar and stated the physician "commented that

although the claimant suffers from abdominal pain, the claimant is able to have full-time employment

of 8 hours a day, 5 days a week." (Doc. 10-3 at 21) The ALJ indicated, "The opinions of Dr. Kumar

are generally accepted since they are not inconsistent with the entire medical evidence." (*Id.*)

Plaintiff asserts the ALJ "exploits what appears to be a typographical error from Dr. Kumar,

when the opinion is viewed in context." (Doc. 14 at 18) Plaintiff argues that "the entire context of Dr.

Kumar's note explains in great detail why he believes that Plaintiff is not capable of full-time work, and

the single statement indicating she can work is quite clearly a typographical error." (*Id.*) According to

Plaintiff, "Where the ALJ misstates a doctor's opinion and fails account for the limitations truly opined

by the physician, the court should remand for proper consideration of the opinion." (*Id.* at 17-18, citing

*Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) [finding "inaccurate

characterization of the evidence" warrants remand]).

As Plaintiff observes, Dr. Kumar explicitly stated that he believed Plaintiff "should be granted

full disability." (*See* Doc. 10-17 at 39) Though this is an opinion on an issue reserved for the

Commissioner, the statement appears to support a conclusion that there was a typographical error as

Plaintiff argues, and that Dr. Kumar believed Plaintiff's conditions did *not* enable her to be employed

full time. The ALJ did not address the final statement of the letter. Likewise, the ALJ did not address

opinion that Plaintiff was diagnosed with Crippling Function Bowel disease and the resulting

symptoms. (*See* Doc. 10-3 at 21-22) Thus, it appears that the ALJ failed to consider the statement as a

whole. The ALJ's selective reading of the opinion from Dr. Kumar does not support the determination

that Plaintiff is able to perform full time work. *See, e.g., Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (the ALJ may not "pick and choose … using portions of evidence favorable to his position while ignoring other evidence"); *Forman v. Comm'r of Soc. Sec. Admin*, 2019 WL 5388038 (D. Az. Oct. 22, 2019) (observing that an ALJ is required to read records "in their proper context"); *Wick v. Astrue*, 2009 WL 2393106 (D. Or. July 31, 2019) (finding that an ALJ erred by omitting a physician's discussion of the claimant's condition and overall prognosis, because it resulted in "a selective reading of the record").

2.    Opinion of Dr. Ramu Thiagarajan

On April 26, 2016, Dr. Thiagarajan completed a "Fibromyalgia Medical Source Statement," in which she indicated that she had been treating Plaintiff since September 2015. (Doc. 10-26 at 73) According to Dr. Thiagarajan, the 2010 American College of Rheumatology Criteria for the Classification of Fibromyalgia, including tender point criteria, were satisfied for Plaintiff. (*Id.*) She indicated Plaintiff's signs and symptoms included a history of widespread pain, tender points, cognitive dysfunction, frequent severe headaches, dizziness, weakness, chronic fatigue syndrome, depression, and more. (*Id.* at 73-74) Dr. Thiagarajan noted Plaintiff had also been diagnosed with chronic refractory migraines and ulcerative colitis. (*Id.*) She indicated Plaintiff's pain could be precipitated by changing weather, fatigue, movement/overuse, cold, stress, and sleep problems. (*Id.*) Dr. Thiagarajan also believed emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. (*Id.* at 74) Dr. Thiagarajan noted Plaintiff was "[n]ot any better with medication intake," and side effects from Lyrica and Cymbalta included weight gain and increased somnolence. (*Id.* at 75) Dr. Thiagarajan opined Plaintiff did not have "the stamina and endurance to work an easy job 8 hours per day 5 days per week" due to "chronic persistent pain [and] headache." (*Id.*) She indicated Plaintiff needed to be able to shift positions at will, and to take breaks every hour to rest due to pain and fatigue. (*Id.* at 76) Further, Dr. Thiagarajan indicated Plaintiff could use her hands for grasping, reaching, and fine manipulations only 10% of a workday. (*Id.*) She concluded Plaintiff was likely to be off task 20% of a day due to her symptoms interfering with attention and concentration, and Plaintiff was likely to miss more than four days per month of work as a result of her impairments. (*Id.*)

The ALJ reviewed this statement and indicated she gave "little weight" to the opinions from

Dr. Thiagarajan, stating:

> Ramu Thiagarajan, M.D. opined the claimant does not have the ability to work 8 hours per day due to chronic persistent pain and headaches; can only use her hands 10% during an 8 hour day; off tasks 20%; and miss work more than four days per month (Exhibit 36F/4-6). The opinions of Dr. Thiagarajan are given little weight since they are not supported by [her] own physical examination despite the claimant's subjective complaints: well developed and nourished appearance; full range of motion of neck; regular rate and rhythm cardiovascularly; normal range of motion, strength, and tone; intact cranial nerves, motor and sensory function, reflexes, gait, and coordination; tenderness in several points; and appropriate affect, demeanor, and normal speech, and normal memory (Exhibit 34F/4, 11-12, 14-15, 18-19, 23). In addition, during the same period between September and November 2015, the claimant reported no weight change, generally healthy, no change in strength or exercise tolerance to another physician, Dr. Sanchez (Exhibit 32F/28, 26, 24). Dr. Sanchez' physical examination was similar to Dr. Thiagarajan's findings: full range of motion, intact cranial pairs, +2 and symmetrical deep tendon reflexes, 5/5 motor strength, intact sensory, normal gait, and normal balance (Exhibit 32F/29, 27, 25, 23).

(Doc. 10-3 at 21-22) Plaintiff contends the ALJ engaged in a "selective discussion of the evidence" to reject the limitations identified by Dr. Thiagarajan, which is "insufficient to support the rejection of a treating physician's opinion." (Doc. 14 at 16)

Plaintiff asserts, "The ALJ's recitation of normal findings, none of which are related to migraine headaches and associated neurological problems, does not support the rejection of this opinion." (Doc. 14 at 16) She observes that Dr. Thiagarajan's examination findings included "significant tenderness in several tender points on exam" and an "MRI of the brain revealed white matter changes." (*Id.*, citing AR 1288 [Doc. 10-26 at 36]) In addition, Plaintiff contends the ALJ erred in summarizing findings of Dr. Sanchez observed that "Plaintiff presented as emaciated and sickly, with weight loss and headaches, and he found tenderness in the abdomen, spastic paraspinal muscles in the neck, and marked wasting of musculature of all extremities." (*Id.* at 17, citing AR 1196, 1201 [Doc. 10-25 at 17, 22]) Further, she notes that the opinions from Dr. Thiagarajan were consistent with the findings of Dr. Sorenson, whose "examination findings included hyper-reflexia with weakness in the left upper extremity, and dysesthesia of the bilateral upper and lower extremities." (*Id.*, citing AR 1317 [Doc. 10-26 at 65])

Notably, the Ninth Circuit determined an ALJ may reject limitations "unsupported by the record as a whole" and inconsistent with the treatment a claimant received. *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010). However, in this event, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

The ALJ fails to connect the normal findings identified to the limitations from Dr. Thiagarajan related to Plaintiff's stamina and endurance. Likewise, the ALJ fails to explain how Plaintiff's normal gait, reflexes, and coordination relate to whether or not Plaintiff could use her hands, would be off task, or ability to complete a normal workweek. The ALJ also ignored the findings from Dr. Sanchez related to Plaintiff's weight loss and "[m]arked wasting of musculature of all extremities," instead stating that Dr. Sanchez believed Plaintiff was "generally healthy" and she had full motor strength. (*Compare* Doc. 10-3 at 22 *with* Doc. 10-25 at 22). Because the ALJ fails to explain how the findings identified conflict with Dr. Thiagarajan's opinions—including related to Plaintiff's need to be able to switch positions, endurance, stamina, and likelihood to miss more than four days of work each month—the ALJ erred in evaluating the limitations identified by Plaintiff's treating physician.[3] Further, the ALJ erred by failing to address probative findings from Dr. Sanchez that supported Dr. Thiagarajan's opinion and instead engaging in a selective review of the record related to Plaintiff's physical functioning. Thus, the purported inconsistencies do not support the ALJ's decision to reject the limitations identified by Dr. Thiagarajan.

### 3.    Opinions related to Plaintiff's mental functioning

Dr. Pauline Bonilla performed a comprehensive psychiatric evaluation on December 28, 2014, at which time Plaintiff reported "a history of depressive symptoms since being diagnosed with fibromyalgia." (Doc. 10- 17 at 18) Plaintiff told Dr. Bonilla that she was depressed due to her medical issues, chronic pain, decreased quality of life, inability to provide for herself financially, and physical limitations. (*Id.* at 18-19) Plaintiff stated she had difficulty concentrating, a low frustration tolerance,

---

[3] Notably, the ALJ did not acknowledge Dr. Thiagarajan's opinion that Plaintiff needed to be able to switch positions between sitting and standing at will.

and poor sleep. (*Id.* at 19-20) Dr. Bonilla observed that Plaintiff's mood was euthymic, her behavior was cooperative, and her attitude was pleasant. (*Id.* at 20) Plaintiff "was able to recall 4/4 digits forward and 4/4 digits backwards" and "recall 3/3 objects after five minutes." (*Id.*) Dr. Bonilla noted Plaintiff "had some difficulty performing simple mathematical calculations and serial 3s." (*Id.* at 21) She found Plaintiff could "perform a simple three-step command successfully" and opined Plaintiff's "concentration was within normal limits." (*Id.*) Dr. Bonilla diagnosed Plaintiff with "Mood Disorder NOS secondary to medical condition," and gave her a GAF score of 64.[4] (*Id.*) She believed Plaintiff's symptom severity was "in the moderate range." (*Id.* at 22) Dr. Bonilla opined Plaintiff was "mildly-to-moderately impaired" with the ability to perform simple and repetitive tasks, accept instructions, sustain an ordinary routine without special supervision, and maintain regular attendance. (*Id.*) Further, Dr. Bonilla determined Plaintiff was "moderately impaired" with the ability to perform detailed and complex tasks, "complete a normal workday/workweek without interruptions from a psychiatric condition" and to deal with stress. (*Id.*)

Dr. Yanira Olaya reviewed the findings from Dr. Bonilla and completed a mental residual functional capacity assessment and psychiatric review technique form on January 20, 2015. (Doc. 10-17 at 24-37) Dr. Olaya opined Plaintiff's alleged level of symptomology was "not observed on [the] exam." (*Id.* at 25) According to Dr. Olaya, Plaintiff had mild restriction of activities of daily living; moderate difficulties in social functioning; and moderate difficulties with maintaining concentration, persistence, or pace. (*Id.* at 36) Dr. Olaya found Plaintiff was "capable of understanding, remembering and carrying out simple one to two step (unskilled) tasks;" could perform "in a low demand work setting consistent [with] simple tasks." (*Id.* at 26) Further, Dr. Olava opined Plaintiff was "able to interact adequately with coworkers and supervisors but may have difficulty dealing with the demands of general public contact." (*Id.*)

The ALJ reviewed these findings and gave "little weight" to the conclusions of Drs. Bonilla and Olaya. (Doc. 10-3 at 22) The ALJ observed that Dr. Bonilla "only reviewed [a] two- page SSA 454

---

[4] Global Assessment of Functioning (GAF) scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV"). A GAF score between 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM-IV* at 34.

form; [the] mental status examination was normal …; and there is no evidence of on-going psychiatric treatment by a mental specialist." (Doc. 10-3 at 22) In addition, the ALJ observed that the GAF score of 64 "indicates mild symptoms and does not correlate to moderate limitations." (*Id.*) Thus, it appears the ALJ rejected the limitations identified for internal inconsistencies in the report of Dr. Bonilla. Likewise, the ALJ gave little weight to the opinion of Dr. Olaya, "[d]ue to [the] inconsistent mental examination by Dr. Bonilla, e.g., intact memory and normal concentration, as well as a lack of supporting treating notes." (*Id.*)

Significantly, the ALJ failed to acknowledge positive findings from Dr. Bonilla's examination, such as Plaintiff's "difficulty performing simple mathematical calculations and serial 3s." (Doc. 10-17 at 21) The ALJ also failed to address portions of Dr. Olaya's opinion related to Plaintiff's limitations with "dealing with the demands of general public contact" and need for "a low demand work setting." (*See id.* at 26) As discussed above, an ALJ may not selectively review the medical evidence and rely upon only favorable entries to support her decision. *Holohan v. Massanari*, 246 F.3d 1195, 1204-05 (9th Cir. 2001). In addition, an ALJ "may not reject 'significant and probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). Because the ALJ failed to discuss these findings and opinions—and thereby failed to reject the evidence— the ALJ erred in her evaluation of the medical evidence related to Plaintiff's mental impairments. *See id.; Kendall v. Berryhill*, 2018 WL 2117380 at*13 (E.D. Cal. May 8, 2018) ("As the ALJ failed to discuss the significant, probative evidence favorable to Plaintiff contained in the medical opinions, the RFC was incomplete and the ALJ's error was not harmless").

**B. Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
> (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to resolve conflicts in the record related to the severity of Plaintiff's impairments and physical limitations.  Similarly, the ALJ erred in her evaluation of the medical evidence related to Plaintiff's mental impairments, and by relying upon her own interpretation of the evidence after by rejecting the only medical opinions in the record related to Plaintiff's mental abilities.  Without medical opinions to support the ALJ's conclusion, the residual functional capacity lacks the support of substantial evidence. *See Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) (holding "the ALJ's conclusions are not supported by substantial evidence" if an RFC is formulated without the findings of a physician).  Thus, upon remand the ALJ should re-evaluate the medical evidence and determine her residual functional capacity.  *See Moisa*, 367 F.3d at 886.

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ erred in evaluating the record related to Plaintiff's residual functional capacity, and the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510.  Thus, the Court **ORDERS**:

1.      The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2.      The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Sondra Dynese Burton, and against Defendant Andrew M. Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __March 29, 2020__                    _____/s/ Jennifer L. Thurston__
                                            UNITED STATES MAGISTRATE JUDGE

12